Sutlife, J.
The case before us depends upon the judicial construction of section 180 of the act of March 23, 1840, "to provide for the settlement of the estates of deceased persons,” above mentioned.
The order made by the probate court assumed the title of the widow to her distributive share of the personal estate of her deceased husband, to have vested in her upon his demise, and by virtue of that fact.
The plaintiffs in error insist that her title to the distributive share provided for her by the statute, could only accrue at the time of the distribution.
The plaintiffs in error rely upon the language of the statute as expressed, and insist that an express change is thereby made in the former statute -upon the same subject, and also insist upon the reason for such change existing at the time of its enactment, in support of their views.
It may not, therefore, be improper to refer to our past legislation upon this subject.
In the second paragraph of the “ Ordinance for the Government of the territory of the United States northwest of the river Ohio,” is to be found the first law upon this subject. In the provision regulating descents of estates there is the following clause: “ Saving in all cases to the widow of the intestate her third part of the real estate for life, and one third part of the personal estate; and this law relative to descents and dower shall remain in full force until altered by the legislature of the district.” Chase’s Stat. 66.
In the territorial act published June 16, 1795, to take effect August 15, 1795, entitled “ a law for the settlement of intestates’ estates,” it was provided: “ Sec. 4..... And in case there be no children, nor any legal representa *6 tives of them; then one moiety of the said estate to be allotted to the wife of the intestate; and the residue of the said estate to be distributed equally to every of the next kindred of the intestate who are in equal degree, and those who legally represent them,” etc. Chase’s Stat. 163.
This act seems to have been a transcript of the statute of Pennsylvania, and remained in force until the passage of the act of February 18,1804, of the second general assembly of the state, entitled “ an act defining the duties of administrators on wills and intestate estatesand in which it is provided as follows :
Sec. 6. “ That the courts of common pleas in the respective counties are hereby authorized to call executors or executrixes, administrators or administratrixes, to account for and touching the property of the deceased, and upon hearing and due consideration thereof, to order and make just and equal distribution of what remaineth clear (after first allowing and deducting all just funeral and other charges or expenses, and what said court may deem sufficient for one year’s support to the widow and children under full age which may remain with her, as also all just debts), among the legal heirs of the deceased, according to law, and to compel such executor or executors to observe and pay the same, by due course of law, saving to every person or persons supposing him or themselves aggrieved, the right of appeal.”
And it is provided by section 7, “ That all laws and parts of laws contrary to the provisions of this act are hereby repealed.” Chase’s Stat. 437.
This act continued in force until repealed by the act passed February 21,1805, entitled “ an act defining the duties of administrators,” etc., and by which it is provided as follows:
Sec. 6. “ That it shall be the duty of the executors or administrators, after all just debts shall have been paid, to set off and allow to the widow of such intestate one full third part only of all the remaining goods and chattels, by her tc be held as her own proper goods and chattels, if there are any living children of the intestate; in case there shall be no children of the intestate living, then the executors or admin *7 istrators shall set off and allow to the widow one moiety of all the goods and chattels remaining after payment of all just debts : Provided, that when the whole amount of the estate, after payment of all debts, shall not exceed two hundred dollars, the widow shall be entitled to one half of the personal estate, as her own proper goods and chattels, to be set off to her in manner above provided.” Chase’s Stat. 497.
This act remained in force until superseded and repealed by the administrator’s act of February 20, 1808, in which it is provided:
Sec. 29. “ That it shall be the duty of the executors or administrators, after all just debts, funeral and other incidental expenses allowed by the court, shall have been fully paid, to set off and assign to the widow of the deceased, if any there be, one third part only of all the remaining balance of the personal estate, by her to be held as her proper estate, provided the deceased shall have left legitimate children of his body; but in case the deceased shall not have left any legitimate children as aforesaid, then, in that case, the widow shall be entitled to all the balance of such personal estate remaining as aforesaid: Provided, nevertheless, that although the deceased shall have left legitimate children, yet if the whole amount of the personal estate, after paying all debts, incidental expenses as aforesaid, doth not exceed four hundred dollars, the widow shall then he entitled to receive and hold one half of such personal estate as her own property, to be set off in manner aforesaid.” Chase’s Stat. 575.
This provision continued in force until repealed by the act entitled “ an act for the proving and recording wills and codicils; defining the duties of executors,” etc., passed February 19, 1810, section 29 of which is a transcript of section ,29 of the act of February 20, 1808, above set forth; and section 39 provides—
“ That whenever any man shall have died, or may hereafter die, and at the time of his death, being an inhabitant of this state, possessed of real or personal property, leaving a widow, and having no collateral heir, the whole of the property shall belong to the widow, after the payment of all just claims *8 against said estate; and in case tlie wife of any man shall die, leaving any property of any kind, having no lineal or collateral heirs, such property shall be vested in her husband.” Chase’s Stat. 681 and 684.
This act was repealed by the revised act passed, upon the same subject, January 25, 1816. But the provisions of sections 29 and 39 of the act of 1810 are retained by sections ■30 and 42 of the act of 1816. Chase’s Stat. 933, 936.
The legislature, on the 11th of February, 1824, repealed and superseded the act of 1816, by an act entitled “ an act defining the duties of' executors and administrators.” It is provided by the act of 1824 as follows :
Sec. 17. “ That when the deceased shall not have left any legitimate child, heir of his body, the widow shall be entitled to the whole residue of the personal property, after the debts, funeral charges and other incidental expenses shall have been paid; that when he shall have left such legitimate ohild, heir as aforesaid, the widow shall be entitled to the one half of such residue, if such residue do not exceed four •hundred dollars, and if it exceed that sum, she shall be entitled to the half of the first four hundred dollars, and one third part of all the remainder, which shall.be set off and assigned to her by the administrator in a reasonable time after the amount of such residue is ascertained.” ■ Chase’s Stat. 1310-11.
The act of 1824 was revised and repealed March 12, 1831, and section 17 of the act of 1824 constitutes section 28 of the revised act of 1831. Chase’s Stat. 1780-1.
This provision of the statute, as expressed by section 17 of the act of 1824, and by section 28 of the revised act of 18.31, continued in force until repealed and superseded by the revisory act of March 23, 1840. In this latter act, the provisions of section 17 of the act of 1824, and of section 28 of the act of 1831, are supplied by section 180 of said act of 1840, now before us for judicial construction.
It thus appears, from this cursory view of the legislation of this State upon the subject, that the provision made for the widow out of the personal estate has differed from that *9 in relation to her dower in the real estate, by always giving her the absolute property, instead of a mere life use of the same.
In the laws of England, provisions from the estate of the deceased husband for the support of the surviving widow seem to have obtained at an early period; and such provisions are found at a still earlier date established by the laws of other nations. While the history of the introduction of the law of dower is peculiar to each country where it obtains, its object and effect, that of a reasonable support of the widow •from the estate of her deceased husband, is the same.
Among the Romans, dower signified the marriage portion which the wife brought to her husband, and over which he •only acquired a right of use and enjoyment during the marriage relation, whether the portion consisted of real or personal property, and the same always reverted to the widow at his death. But among the Germans it was a rule that the woman should bring no fortune in her marriage, to the husband, but should acquire a right to some of the husband’s property in case she survived him.
In England, the custom of dower was unknown previous to the arrival of the Saxons; and the custom was only introduced into Ireland upon their adopting the English laws.
Glanville states the law of dower in his time (the latter part of the twelfth century, Hen. II), to be that if a person endowed his wife generally, then the wife was entitled to her dos rationabilis, which was one .third of her husband’s liberum tenementum. And if he named a dower which amounted to more than a .third, it was reduced to a third. Nor was the ■wife entitled to dower out of any of his future acquisitions, unless specially engaged before the priest to endow her' of •them. Glanv. Lib. 6, c. 1, 2, etc.
But whatever curiosity and learning may be indulged in, touching the early custom of dower, and its probable derivation from the Germans, “dower in the common law” (as Coke informs us), “ is taken for that portion of the lands or tenements which the wife hath for the term of her life of thb lands or tenements of her husband after his decease for the *10 sustenance of herself and the nurture and education of her children.”
The provision for the widow, by her strict common law' right of dower, has been in England qualified and enlarged by various statutes, especially by that of Charles II, ch. 10, 22 and 23. It was provided by section 5 of that act as follows:
“ That all ordinaries and every other person who by this act is enabled to make distribution of the surplusage of the estate of any person dying intestate, shall distribute the whole surplusage of such estate or estates in manner and form following, that is to say : one third part of the said surplusage to the wife of the intestate, and all the residue by equal portions to and among the children of such person dying intes-: tate, and such persons as legally represent such children, in case any of the children be then dead, other than such child, or children (not being heir at law), who shall have any estate by the settlement of the intestate in his lifetime, by portion, or portions equal to the share which shall by such distribution be allotted to the other children to whom such distribution is to be made,” etc.
In the United States the provision for the widow is for the-most part made and regulated entirely by statutory enactments. Still, by statute as well as by common law, marriage, seizin, and the death of the husband, are the three things essential to the consummation of the right of dower.
It is principally, however, to our own statutes upon the subject, that we have to refer for aid in the construction of the statute before us.
The provisions of all of our statutes, it will be observed,, seem to express the common law doctrine of dower in relation to lands, giving the widow only a life use of the third part “ for the sustenance of herself and the nurture and education of her children; ” but to depart from the common law upon-the subject of dower, in the appropriation to her of the personal estate, giving her, not only the use but the absolute title to all personal property distributed to her. And this, too,, whether the personal property be assigned to her for he* *11 year’s support, or fall to her under the statute of distribution. It is also to be remarked, that all of the statutes of this State giving the widow a distributive share of the personal estate, previous to the statute of 1840, not only gives her the same perfect title to her share of the personal property, which it gives the heirs to their respective shares; but her title, like that of the heir thereto, is made to accrue upon the death of the husband. The titles of the widow and heir to the personal property under all the preceding statutes of distribution, accrue under the same statute, commence at the same time, and are of the same character. Another thing is noticeable as to all those statutes of distribution. They seem to savor rather of statutory provisions regulating descent, than to conform to the common law doctrine of dower, for the sustenance of herself and the nurture and education of her children. If the latter had been the object, the share of the widow in the personal property should have been increased, instead of diminished, where the intestate left children; whereas the course of legislation in this state has been to increase the distributive share of the widow in cases where there were no children for nurture and education. These statutes of distribution seem rather to recognize the relation of the widow to be to the intestate, in nearness and affection, akin to that of the child, and possessing a like claim to be regarded an heir, as to his personal estate, and to take with heirs, as co-distributee, a certain part of the personal estate.
But it is urged that the language and reason of the statute of 1840 warrants the conclusion, that the rule expressed by preceding statutes upon the subject, especially by the statutes of 1824 and 1831, was essentially qualified thereby, if not entirely changed.
The former statute was in the following language:
“ That when the deceased shall not have left any legitimate child . . . the widow shall be entitled to the whole residue of the personal estate after the debts, funeral charges and other incidental expenses shall have been paid; that when he shall have left such legitimate child, heir as aforesaid, the *12 widow shall be entitled to the one half of such residue, if such residue do not exceed four hundred dollars, and one third part of all the remainder; which shall be paid to her by the administrator in a reasonable time after the amount of such residue is ascertained.”
The statute of 1840 provides that,
“When the intestate shall not have left any legitimate child, heir of his body, the widow shall be entitled to all the personal estate, as next of kin, which shall be subject to distribution upon settlement of the estate; and if the intestate shall have left such child, the widow shall be entitled, upon distribution, to one half of any sum not exceeding four hundred dollars, and to one third of the residue of the personal estate subject to distribution.”
Now, it is said that, while previous to the statute of 1840, the right of the widow to her distributive share might well have been held, under the former statutes, to have accrued at the same time with that of the children — at the time of the death of the intestate; yet the language of the statute of 1840, in case the intestate have left a legitimate child, changes the time of the accruing of the widow’s right to her distributive share from that of the intestate’s death, to that of the actual distribution by the administrator on final settlement.
It is admitted that under the first clause of section 180 of the statute of 1840, in case the intestate left no child, the widow’s right would still accrue under that statute, as under former statutes, at the time of the death of .the intestate. But it will be perceived that there is a change in the phraseology of that clause of the statute as well as in the latter clause of the same section, from the phraseology of the former statutes; and this difference is certainly not less than between the former and latter clause of the latter statute. The former clause provides that, when no child, “ the widow shall be entitled to all the personal estate, as next of kin, which shall be subject to distribution upon settlement of the estate; ” the latter clause proceeds, “ and if the intestate shall have left such child, the widow shall be entitled, upon distribution, to one half of any sum not exceeding four hun *13 dred dollars, and to one third the residue of the personal estate subject to distribution,”
Now, in the first case, if the widow shall have died before the time for distribution, it might perhaps be said, at the time of her death there was no “personal estate subject to distribution.” The first part of the section, no more than the last, expresses the time when the right of the widow accrues. And neither, when there is or is not a child left by the intestate, is the widow entitled to take any share until the time of distribution. Nor can it be said that any distinction as to-the time the right of the widow accrues, where there is not, and where there is a child left by the intestate, arises from the fact of the words, “ as next of kin,” being used in the former, and not in the latter clause. Those words having been used in the former clause are clearly to be understood in the latter; and their repetition would he only superfluous. Admitting, therefore, to the fullest extent the force of the rule, that, where words are plain and clear and the sense distinct and perfect arising on them, “ it is not allowed to interpret what has no need of interpretation,” still, I apprehend, it can hardly be thereby claimed that any change of the rule of distribution made by previous statutes as to the time of the widow’s right accruing, is expréssed by the statute of 1840.
But there is still another rule, and one peculiarly applicable to revisory statutes. It is a well settled rule, that in the-revision of statutes neither an alteration in phraseology, nor the omission or addition of words, in the latter statute, shall be hold necessarily, to alter the construction of the former act. And the court is only warranted in holding the construction of a statute when revised, to be changed, where the intent of the legislature to make such change is clear, or the language used in the new act plainly requires such change of construction. Such was the holding of this court at the last term, in the case of Ash v. Ash and others, 9 Ohio St. Rep. 387. See also 9 Ohio St. Rep. 418, for the authorities there cited.
Nor is the application of this rule of construction to like *14 cases, a novel one in this, or in other courts. See Taylor v. Delancy, 2 Caine’s Cases, 143; Guffey v. Colvill, 6 Hill, 574, et passim.
Applying this rule, then, to the revisory statute, and how stands the case? The former statutes provided that the widow, in the absence of children of the intestate, “shall be entitled to the whole residue of the personal property, after the debts, funeral charges, and other incidental expenses shall have been paid.” The revising statute provides, that in a like case, “ the widow shall be entitled to all the personal estate, as next of kin, which shall be subject to distribution upon settlement of the estate.”
Now, if the former statute is to be understood as vesting the title of the personal estate in the widow, at the death of the intestate, subject only to payment of debts and incidental expenses of administration, so that she takes as heir; it is difficult to see how the difference of phraseology in the revising statute, by substituting the words — “which shall be subject to distribution upon settlement of the estate,” for the words, “residue after the payment of all debts,” etc., can be said to express an intentional change in the former statute, so that the widow should cease to take as heir, or distributee, under the latter statute, on the death of the intestate. And especially so, when the words, “as next of kin” not used in the former statute, are added and expressed in the latter. The language of the revising statute, therefore, would seem to express the same meaning expressed by the former statute, and at least with equal clearness, as to the time of the widow’s title accruing. The words “ residue, after the payment of all debts,” etc., and the words, “which shall be subject to distribution upon the settlement of the estate,” are of precisely the same import. Each expresses all that part of the personal estate which, in the absence of any provision for the widow, by the existing laws of descent, would belong to the next of kin, as heir of the intestate. And each form of expression would seem alike to express, not the time when the widoAv’s right accrued, but the extent of her interest in the personal estate; to make the same subject to the liabilities *15 of all inheritance, to-wit: the payment of debts and incidental expenses.
Nor can we perceive the force of the reasons urged against the widow’s title being held to accrue the same as that of the heir, “the next of kin,” at the time of the death of the intestate.
It is said that in case of her decease before the distribution is made by the administrator, such a construction would be attended with the unreasonable consequence of passing the personal estate to those not of kin to the intestate, and who were not the objects of his affection, and without any -claim upon his beneficence. But this argument is one that goes rather to the title itself, than to the time of its commencement. For if the widow die immediately after distribution, it is admitted that the title conferred upon her by the statute being absolute, the property must necessarily pass to her rep ■resentatives, and not to those of the intestate.’ So, toe, in many cases where the property of the intestate goes, by •our statute of descents, to a child of the intestate, upon the •decease of the child, even before distribution, or possession taken, the entire property may pass to the mother, or to collateral relations not of kin to the intestate. Indeed, it is a sufficient answer to the argument, that our statutes of descent and distribution contemplate only existing representatives, at the time of the decease of the intestate, and the title vests instanter in the legal representative upon the demise of the intestate, subject only to the fiduciary title of the administrator. The statute of distribution has respect to those living, while living, and not after. It is only when the representative dies, that the statute can, after the title has become vested, again be called into action to transmit the- title; and then, such representative only occupies the position of an intestate, and the action of the statute can only determine the rights of survivors as his representatives.
We are clearly of the opinion that the statute of 1840, in no wise changed the former rule, as to the time when the widow’s right to her share of the personal property accrued. Her title, like that of the heir, accrued upon the death of *16 her husband, and, as next of kin, she then became entitled to her distributive share of the personal property, subject to the administration upon the estate of the intestate. Neither the heir nor the widow, was entitled to receive such distributive share, until the liabilities of the estate were first discharged. But upon payment of the debts and incidental expenses by the administrator, the residue would be ascertained and remain for distribution, and become then due, and payable to the widow, and heirs respectively. And the statute has, in such case, determined the distributive share of the widow to be one half of any sum not exceeding four hundred dollars, and one third of the residue of the personal estate subject to distribution. It seems that the administrator has,, in this case, deeming it safe, very properly paid over to the respective parties entitled to the residue, before final distribution, or upon partial settlements made as required; there should then be a statement showing the payments and the amount due upon each of the distributive shares as expressed. And we understand such to have been the judgment of the probate court.
The judgment of that court is, therefore, affirmed.

Judgment accordingly,

Brinkerhoee, C.J., and Scott, Peck and Gholson, JJ., concurred